Katelyn Kinn
Meredith Crafton
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| WASTE ACTION PROJECT,<br><br>Plaintiff,<br>v.<br><br>AMERICOLD LOGISTICS LLC,<br><br>Defendant. | ) | COMPLAINT |

## I. INTRODUCTION

1. This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff Waste Action Project seeks declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Americold Logistics LLC's ("Americold"), repeated and ongoing violations of the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit authorizing certain stormwater discharges of pollutants from Americold's facility in Burlington, Washington to navigable waters.

## II. JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction over Plaintiff's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d), authorize the relief Plaintiff's request.

3. Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Waste Action Project notified Americold of its violations of the CWA and of Waste Action Project's intent to sue under the CWA by letter dated and postmarked April 29, 2026 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. The allegations in sections I-VI of the Notice Letter, except for section II par. 3, 6, 7, 10, and 13, are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Waste Action Project notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Washington Department of Ecology ("Ecology") of its intent to sue Americold by mailing copies of the Notice Letter to these individuals on April 29, 2026.

4. At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5. The violations complained of in the Notice Letter are continuing and/or are reasonably likely to re-occur.

6. At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.



SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

7. The source of the violations complained of is in Skagit County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

## III. PARTIES

8. Plaintiff Waste Action Project is suing on behalf of itself and its members.

9. Waste Action Project is a non-profit corporation organized under the laws of the state of Washington. Waste Action Project is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Waste Action Project is a membership organization and has at least one member who is injured by Americold's violations.

10. Waste Action Project has representational standing to bring this action. Waste Action Project's members are reasonably concerned about the effects of discharges of pollutants, including stormwater from Americold's facility, on water quality and aquatic species and wildlife that Waste Action Project's members observe, study, use, and enjoy. Waste Action Project's members are further concerned about the effects of discharges from Americold's facility on human health. In addition, discharges from Americold's facility lessen Waste Action Project's members' aesthetic enjoyment of nearby areas. Waste Action Project has members who live, work, fish, and recreate around the Skagit River just downstream from Gages Slough, both of which are affected by Americold's discharges. Waste Action Project's members' concerns about the effects of Americold's discharges are aggravated by Americold's failure to record and timely report information about its discharges and pollution controls in a timely manner. The recreational, scientific, economic, aesthetic, and/or health interests of Waste Action Project and



SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

its members have been, are being, and will be adversely affected by Americold's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

11. For example, one member of Waste Action Project is a Mount Vernon resident whose home and place of business both overlook the Skagit River downstream of Americold's discharges. The health of the Skagit Valley ecosystem is important to this member's spiritual, aesthetic, and recreational enjoyment as well as their physical health and wellness. This member enjoys the views of the water from their home and workplace as well as from regular shoreline walks and bike rides. They also enjoy eating local salmon and watching birds. But this member's enjoyment of the river, birds and other wildlife is reduced by their knowledge of and reasonable concerns about pollution flowing into the waterway. Knowing about the pollutants flowing to Skagit River from industrial facilities including Americold is worrisome, and this member's enjoyment is reduced by their concerns about the impacts of pollutants in the water. If there were less pollution being released into the Skagit River watershed, this member would enjoy walking, bicycling, birdwatching, and nature-watching downriver of Gages Slough more often.

12. Defendant Americold LLC is a corporation authorized to conduct business under the laws of the state of Washington.

13. Americold operates a facility, located at or about 301 S. Walnut St, Burlington, WA, 98233 (referred to herein as the "facility").

## IV. LEGAL BACKGROUND

14. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a pollutant from a point source to waters of the United States without authorization by a NPDES permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, is prohibited.



SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

15. The state of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

16. Under Section 402 of the CWA, 33 U.S.C. § 1342, Ecology has repeatedly issued iterations of the Industrial Stormwater General Permits, most recently on December 2, 2024, effective January 1, 2025, and set to expire December 31, 2029 (the "2025 ISGP"). The previous permit was issued on November 20, 2019, effective January 1, 2020, and set to expire December 31, 2024 (the "2020 ISGP"). The 2020 ISGP and 2025 ISGP (collectively, "the Permit"), contain substantially similar requirements and authorize those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions.

17. The Permit imposes certain terms and conditions on those covered thereby, including requirements for monitoring and sampling of discharges, reporting and recordkeeping requirements, and restrictions on the quality of stormwater discharges. To reduce and eliminate pollutants in stormwater discharges, the Permit requires, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges. The specific terms and conditions of the Permit are described in detail in the Notice Letter, attached hereto as Exhibit 1 and incorporated herein by this reference.



SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

## V. FACTS

18. Ecology granted Americold coverage for the facility under the 2020 ISGP under Permit number WAR000591. Americold was granted coverage under the 2025 ISGP under the same Permit number WAR000591.

19. Americold discharges stormwater and pollutants associated with industrial activity to Gages Slough, which flows into the Skagit River.

20. Americold's facility is engaged in industrial activities and is approximately 7 acres, which is mostly impervious. Americold's facility has multiple distinct points of discharge where stormwater and other pollutants leave the facility and enter Gages Slough and eventually the Skagit River.

21. Americold has violated and continues to violate "effluent standards or limitations," as defined by 33 U.S.C. §1365(f), including conditions of the NPDES permit. *See* 33 U.S.C. §§ 1311(a) and 1342. Americold's violations of the Permit and the CWA are set forth in sections I-VII of the Notice Letter attached hereto as <u>Exhibit 1</u> and are incorporated herein by this reference, except for section II par. 3, 6, 7, 10, and 13. In particular, and among the other violations described in the Notice letter, Americold has violated the Permit by violating AKART standards, failing to prepare and implement an adequate SWPPP, failing to implement BMPs to control water quality, failing to collect quarterly stormwater samples for all distinct discharges, failing to collect representative stormwater samples, failing to analyze quarterly stormwater samples for all distinct discharges, failing to submit timely discharge monitoring reports (DMRs), failing to report data in correct units, violating visual monitoring requirements, failing to implement corrective actions, failing to record information, failing to retain records, and failing to report Permit violations.



SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

22. Americold discharges stormwater from the facility containing levels of pollutants that exceed the benchmark values established by the Permit, including the days on which Americold collected samples with the results identified in Table 1, below, and is likely to continue discharging comparably unacceptable levels of pollutants in its stormwater:

**Table 1 – Benchmark Exceedances**

| **Quarter in which sample collected** | **Turbidity (Benchmark 25 NTU)** | **pH (Benchmark: >5 and <9)** | **Cu Concentration (Benchmark 14 ug/L)** | **Zn Concentration (Benchmark 117 ug/L)** |
|---|---|---|---|---|
| 2nd Quarter 2020 | | | | |
| 3A | | | | 234 $\mu$g/L |
| 5A | | | | |
| 10A | | | | |
| 3rd Quarter 2020 | | | | |
| 3A | | | | 428 |
| 5A | | | | 270 |
| 10A | | | | 203 |
| 4th Quarter 2020 | | | | |
| 3A | | | 16.9 $\mu$g/L | 677 |
| 5A | | | | 166 |
| 10A | | | | |
| 1st Quarter 2021 | | | | |
| 3A | | | | 1290 |
| 5A | | | | 385 |
| 10A | | | 26.2 | 618 |
| 2nd Quarter 2021 | | | | |
| 3A | | | | 160 |
| 5A | | | 21.2 | 289 |
| 10A | | | | 130 |
| 3rd Quarter 2021 | | | | |
| 3A | | | | |
| 5A | 34 NTU | | | 362 |
| 10A | 90 | | 20.8 | 319 |
| 4th Quarter 2021 | | | | |
| 3A | | | | |
| 5A | | | | |
| 10A | 180 | | | |
| 1st Quarter 2023 | | | | |
| 3A | | | | |
| 4A | | | | |
| 5A | | | | |



SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

| | | | | |
|---|---|---|---|---|
| 10B | 32.5 | | | 166 |
| 4th Quarter 2023 | | | | |
| 3A | | | | |
| 4A | | | | |
| 5A | 80 | | | |
| 10B | | | | 284 |
| 2nd Quarter 2024 | | | | |
| 3A | | | | |
| 4A | | | | |
| 5A | | | | |
| 10B | | | | 133 |
| 4th Quarter 2024 | | | | |
| 3A | | 9.5 | | 165 |
| 4A | | | | |
| 5A | | | | |
| 10B | | | | |
| 1st Quarter 2025 | | | | |
| 3A | | | | 149.5 |
| 4A | | | | |
| 5A | | | | |
| 10B | | | | |
| 2nd Quarter 2025 | | | | |
| 3A | | | | 143.5 |
| 4A | | | | |
| 5A | | | | 120 |
| 10B | | | | |
| 3rd Quarter 2025 | | | | |
| 3A | | | | 205 |
| 4A | | | | |
| 5A | | | | |
| 10B | | | 32 | 400 |

* 3A, 4A, 5A, 10A and 10B are monitoring point designations used and known by Americold.

23. Americold attests that the stormwater samples identified in Table 1 are representative of and accurately characterize the quality of stormwater discharges generated by Americold's facility during the associated calendar quarters. The stormwater monitoring data provided in Table 1 shows benchmark exceedances included in the stormwater monitoring results that Americold submitted to Ecology.

24. Americold's exceedances of the benchmark values indicate that Americold is failing to apply AKART to its discharges and is failing to implement an adequate SWPPP and



SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

BMPs. Americold violated and continues to violate Conditions S10 and S3 of the Permits by not developing, modifying, and/or implementing BMPs in accordance with the requirements of the Permit, and/or by not applying AKART to discharges from the facility. These requirements and Americold violations thereof are described in detail in sections I and II of the Notice Letter, attached as Exhibit 1, and incorporated herein by this reference, except for section II par. 3, 6, 7, 10, and 13.

25. Americold has violated and continues to violate the monitoring requirements of Conditions S4.B, S5.A, and S7 of the Permits. The facility has at least four distinct points of discharge off-site: Outfall 3A, Outfall 4A, Outfall 5A, and Outfall 10B, as well as various other additional unnamed distinct points of discharge located around the site's perimeter. Americold has failed to collect a sample of its stormwater discharge once during every calendar quarter from each distinct point of discharge offsite except for substantially identical outfalls. Americold has failed to analyze its quarterly stormwater samples for all required parameters including as described in Table 2 below:

**Table 2 – Discharge Point Not Sampled**

| Monitoring Period | Discharge Point Not Sampled |
|---|---|
| 2nd Quarter 2022 | Outfall 10A |
| 3rd Quarter 2022 | All Discharge Points |
| 2nd Quarter 2023 | 10B |
| 3rd Quarter 2023 | 10B |
| 1st Quarter 2024 | 10B |
| 3rd Quarter 2024 | All Discharge Points |
| 1st Quarter 2025 | 4A |
| 2nd Quarter 2025 | 4A |
| 3rd Quarter 2025 | 4A, 5A |
| 4th Quarter 2025 | All Discharge Points |
| 1st Quarter 2026 | All Discharge Points |



SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

These requirements and Americold violations thereof are described in detail in sections III.A of the Notice Letter, attached as Exhibit 1, and incorporated herein by this reference. These violations are reasonably likely to recur.

26. Americold failed to analyze stormwater samples collected quarterly for turbidity, pH, total copper, and total zinc as required by Condition S5.A.1 of the Permits by failing to analyze stormwater samples collected from Outfall 3A and Outfall 5A during the first quarter of 2024 for total copper and total zinc. These requirements and Americold violations thereof are described in detail in sections III.B of the Notice Letter, attached as Exhibit 1, and incorporated herein by this reference. These violations are reasonably likely to recur.

27. Americold has failed to timely submit discharge monitoring reports as required by Condition S9.B of the Permits. Americold violated these conditions by failing to submit a DMR for any outfall within the time prescribed for the second quarter 2021, third quarter 2024, second quarter 2025, fourth quarter 2025, and first quarter 2026. These requirements and Americold violations thereof are described in sections III.C of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference. These violations are reasonably likely to recur.

28. Americold has violated visual monitoring requirements by failing to conduct Industrial Stormwater Monthly Inspections, failing to maintain the requisite inspection reports and checklists, and failing to make the requisite certifications and summaries by qualified personnel each and every month for the last five years. These requirements and Americold violations thereof are described in sections III.D of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference. These violations are reasonably likely to recur.

29. Americold triggered Level One Corrective Action requirements for each benchmark exceedance identified in Table 1 above. Americold has violated the requirements of



SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Condition S8.B of the Permits by failing to conduct Level One Corrective Action requirements in accordance with the Permit's conditions, including the required inspection to investigate the cause; review, revision, and certification of the SWPPP; the required implementation of additional BMPs; and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, including the benchmark exceedances listed in Table 1 above. These Corrective Action requirements and Americold's violations thereof are described in section IV.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

30. Americold triggered Level Two Corrective Action requirements for each benchmark exceedance identified in Table 1 above that occurred in any two quarters of a calendar year for the same pollutant parameter. Americold has violated the requirements of Condition S8.C of the Permits by failing to conduct a Level Two Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional structural source control BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any two quarters during a calendar year for the same pollutant parameter, including the benchmark exceedances listed in Table 1 above. These violations include but are not limited to Americold's failure to perform Level Two Corrective Action requirements for turbidity, copper, and zinc triggered by its stormwater sampling during calendar year 2021, for turbidity and zinc triggered by its stormwater sampling during calendar year 2023, and for zinc triggered by its stormwater sampling during calendar year 2024. These corrective action requirements and Americold's



SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

violations thereof are described in section IV.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

31. Americold triggered Level Three Corrective Action requirements for each benchmark exceedance identified in Table 1 above that occurred in any three quarters of a calendar year for the same pollutant parameter. Americold has violated the requirements of Condition S8.D of the Permits by failing to conduct a Level Three Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional/new treatment BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any three quarters during a calendar year for the same pollutant parameter, including the benchmark exceedances listed in Table 1 above. These violations include but are not limited to Defendants' failure to fulfill these obligations for copper and zinc triggered by its stormwater sampling during calendar year 2021. In addition, Defendants triggered a Level Three Corrective Action obligation for zinc during calendar year 2025. If the Defendants do not conduct a Level Three Corrective Action in accordance with the permit conditions, Defendants will be in violation of its Condition S8.D as described above. These corrective action requirements and Americold's violations thereof are described in section IV.C of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

32. Americold has violated the requirement of Permit Condition S9.C to submit an accurate and complete annual report to Ecology by the required deadline and including the requirement documentation of specific information including descriptions of corrective actions. Americold violated these requirements because the annual reports submitted by Americold for



SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

2021, 2023 and 2024 do not include the required information. These annual report requirements and Americold's violations thereof are described in section V of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

33. Americold has violated the recordkeeping requirements of Permit Condition S4.B.4 because Americold does not record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Americold collected the sample within the first twelve hours of stormwater discharge event, an explanation of why Americold could not collect a sample within the first twelve hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling, as required by the Permit Condition. These requirements and Americold's violations thereof are described in section VI.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

34. Americold has violated the record keeping requirements of Permit Condition S9.D. Americold does not retain for a minimum of five years a copy of the current Permit, a copy of Americold's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit, as required by the Permit Conditions. These requirements and Americold's violations thereof are



SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

described in section VI.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

35. Condition S9.F of the Permits requires Americold to take certain actions, including reporting to Ecology, in the event Americold is unable to comply with any terms and conditions of the Permit which may endanger human health or the environment. Americold has violated these requirements of the Permit by failing to report and subsequently correct permit violations, including each and every time Americold violated corrective action requirements as described above in paragraphs 29-31. These violations are in section VII. of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

36. A significant penalty should be imposed against Americold under the penalty factors set forth in 33 U.S.C. § 1319(d).

37. Americold's violations were avoidable had Americold been diligent in overseeing facility operations and maintenance.

38. Americold benefited economically as a consequence of its violations and failure to implement improvements at the facility.

39. Americold's violations caused and contributed to pollution in the water column and sediments of the receiving water, which may be ameliorated by an order from the Court requiring clean up or monitoring.

## VI. CAUSE OF ACTION

40. The preceding paragraphs and the allegations in sections I-VII of the Notice Letter attached hereto as Exhibit 1 are incorporated herein, except for section II par. 3, 6, 7, 10, and 13.



SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

41. Americold's violations of its NPDES permit described herein and in the Notice Letter constitute violations of "effluent standard(s) or limitation(s)" as defined by Section 505 of the CWA, 33 U.S.C. § 1365.

42. No agency has taken an enforcement action constitution diligent prosecution or otherwise precluding claims under 33 U.S.C. §§ 1319 or 1365(a).

43. Prior notice of violations and claims was provided to Americold and others as required.

44. These violations committed by Americold are ongoing or are reasonably likely to reoccur. Any and all additional violations of the Permit and the CWA which occur after those described in Waste Action Project's Notice Letter, but before a final decision in this action, should be considered ongoing violations subject to this Complaint.

45. Without the imposition of appropriate civil penalties and the issuance of an injunction, Americold is likely to continue to violate the Permit and the CWA to the further injury of Waste Action Project, its members, and others.

## VII. RELIEF REQUESTED

Wherefore, Waste Action Project respectfully requests that this Court grant the following relief:

A. Issue a declaratory judgment that Americold has violated and continues to be in violation of the Permit and the CWA

B. Enjoin Americold from operating the facility in a manner that results in further violations of the Permit and the CWA;

C. Order Americold to immediately develop and implement a SWPPP that complies with the Permit at the facility;



SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

D. Order Americold to allow Waste Action Project to participate in the development and implementation of Americold's SWPPP and compliance plan;

E. Order Americold to provide Waste Action Project, for a period beginning on the date of the Court's Order and running for three years after Americold achieves compliance with all of the conditions of the Permit, with copies of all reports and other documents which Americold submits to Ecology regarding Americold's coverage under the Permit at the facility at the time these documents are submitted;

F. Order Americold to take specific actions to remediate the environmental harm caused by its violations;

G. Order Americold to pay civil penalties of $68,445 per day of violation for each violation committed by Americold, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

H. Award Waste Action Project its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

I. Award such other relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 1st day of July, 2026,

SMITH & LOWNEY, PLLC

By: _s/Katelyn Kinn_
Katelyn Kinn, WSBA #42686
_s/Meredith Crafton_
Meredith Crafton, WSBA #46558
Attorneys for Plaintiff
2317 E. John St.,
Seattle, WA 98112

Tel: (206) 860-2124
Fax: (206) 860-4187
E-mail: katelyn@smithandlowney.com
meredith@smithandlowney.com

# Exhibit 1

SMITH & LOWNEY
PLLC
ATTORNEYS AT LAW

April 29, 2026

**Via Certified Mail - Return Receipt Requested**

Managing Agent
Americold Logistics LLC
301 South Walnut St
Burlington, WA 98233

Managing Agent
Americold Logistics LLC
10 Glenlake Parkway NE
South Tower, Suite 600
Atlanta, GA 30328

Managing Agent
BCS Operations LLC
301 South Walnut St
Burlington, WA 98233

Managing Agent
BCS Operations LLC
2825 Roeder Ave
Bellingham, WA 98225-2053

Re: **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

We represent Waste Action Project, P.O. Box 9281, Covington, WA 98042, (206) 849-5927. Any response or correspondence related to this matter should be directed to us at the letterhead address (Smith & Lowney, PLLC, 2317 E John St., Seattle, WA 98112). This letter is to provide you with sixty days' notice of Waste Action Project's intent to file a citizen suit against Defendants Americold Logistics LLC and/or BCS Operations LLC, both collectively, jointly, and severally liable, ("Defendants") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below. This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Defendants' National Pollution Discharge Elimination System ("NPDES") permit.

Defendants were granted coverage under Washington's Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") effective January 1, 2020 and expired on December 31, 2024 under NPDES No. WAR000591 (the "2020 Permit"). Ecology granted Defendants coverage under the current iteration of the ISGP effective January 1, 2025, and set to expire on December 31, 2029 (the "2025 Permit") and maintains the same permit number, WAR000591.

Defendants have violated and continues to violate effluent standards and limitations under the CWA (see 33 U.S.C. §§ 1365(f)) including the terms and conditions of the 2020 Permit and the 2025 Permit (collectively, the "Permits") with respect to operations of, and discharges of stormwater and pollutants from, its facility located at or about 301 S. Walnut St, Burlington, WA, 98233 (the "facility") as described herein, to Gages Slough, which flows into the Skagit River. The facility subject to this notice includes any contiguous or adjacent properties owned or operated by Defendants.

## I. COMPLIANCE WITH STANDARDS.

### A. Violations of Water Quality Standards

Condition S10.A of the Permits prohibits discharges that cause or contribute to violations of water quality standards. Water quality standards are the foundation of the CWA and Washington's efforts to protect clean water. In particular, water quality standards represent the U.S. Environmental Protection Agency ("EPA") and Ecology's determination, based on scientific studies, of the thresholds at which pollution starts to cause significant adverse effects on fish or other beneficial uses. For each water body in Washington, Ecology designates the "beneficial uses" that must be protected through the adoption of water quality standards.

A discharger must comply with both narrative and numeric criteria water quality standards. WAC 173-201A-010; WAC 173-201A-510 ("No waste discharge permit can be issued that causes or contributes to a violation of water quality criteria, except as provided for in this chapter."). Narrative water quality standards provide legal mandates that supplement the numeric criteria. Furthermore, the narrative water quality standard applies with equal force even if Ecology has established a numeric water quality standard. Specifically, Condition S10.A of the Permits requires that the facility's discharges not cause or contribute to an excursion of Washington State water quality standards.

Defendants discharge polluted stormwater to Gages Slough, via drains and pipes. Gages Slough is a tributary to the Skagit River. Defendant discharges stormwater that contains elevated levels of turbidity, copper, and zinc, and pH which is outside benchmark range, as indicated in discharge monitoring data reported under the Permit, as indicated in the table(s) of benchmark and numeric effluent limit excursions below. These discharges cause and/or contribute to violations of water quality standards for turbidity, total copper, total zinc, and pH in Gages Slough and the Skagit River and have occurred each and every day during the last five years on which there was 0.1 inch or more of precipitation and continue to occur. *See* WASH. ADMIN. CODE §§ 173-201A-200 (fresh water designated uses and criteria), (1)(a)(b) (general criteria that apply to all aquatic life fresh water uses), 1(e) (turbidity criteria), 1(g) (pH criteria), 2(a) (general criteria applicable to fresh water recreational uses), (4) (miscellaneous uses including

wildlife habitat, harvesting commerce and navigation, boating, and aesthetics general criteria); 173-201A-600 (use designations – fresh waters); 172-201A-602 (use designations for fresh waters by water resource inventory area, including the Lower Skagit); 173-201A-240 (toxic substances criteria for copper and zinc); 173-201A-260 (natural conditions and other water quality criteria and applications).

**Table 1 – Benchmark Exceedances**

| **Quarter in which sample collected** | **Turbidity (Benchmark 25 NTU)** | **pH (Benchmark: >5 and <9)** | **Cu Concentration (Benchmark 14 ug/L)** | **Zn Concentration (Benchmark 117 ug/L)** |
|---|---|---|---|---|
| 2nd Quarter 2020 | | | | |
| 3A | | | | 234 µg/L |
| 5A | | | | |
| 10A | | | | |
| 3rd Quarter 2020 | | | | |
| 3A | | | | 428 |
| 5A | | | | 270 |
| 10A | | | | 203 |
| 4th Quarter 2020 | | | | |
| 3A | | | 16.9 µg/L | 677 |
| 5A | | | | 166 |
| 10A | | | | |
| 1st Quarter 2021 | | | | |
| 3A | | | | 1290 |
| 5A | | | | 385 |
| 10A | | | 26.2 | 618 |
| 2nd Quarter 2021 | | | | |
| 3A | | | | 160 |
| 5A | | | 21.2 | 289 |
| 10A | | | | 130 |
| 3rd Quarter 2021 | | | | |
| 3A | | | | |
| 5A | 34 NTU | | | 362 |
| 10A | 90 | | 20.8 | 319 |
| 4th Quarter 2021 | | | | |
| 3A | | | | |
| 5A | | | | |
| 10A | 180 | | | |
| 1st Quarter 2023 | | | | |
| 3A | | | | |
| 4A | | | | |
| 5A | | | | |
| 10B | 32.5 | | | 166 |

| | | | | |
|---|---|---|---|---|
| 4th Quarter 2023 | | | | |
| 3A | | | | |
| 4A | | | | |
| 5A | 80 | | | |
| 10B | | | | 284 |
| 2nd Quarter 2024 | | | | |
| 3A | | | | |
| 4A | | | | |
| 5A | | | | |
| 10B | | | | 133 |
| 4th Quarter 2024 | | | | |
| 3A | | 9.5 | | 165 |
| 4A | | | | |
| 5A | | | | |
| 10B | | | | |
| 1st Quarter 2025 | | | | |
| 3A | | | | 149.5 |
| 4A | | | | |
| 5A | | | | |
| 10B | | | | |
| 2nd Quarter 2025 | | | | |
| 3A | | | | 143.5 |
| 4A | | | | |
| 5A | | | | 120 |
| 10B | | | | |
| 3rd Quarter 2025 | | | | |
| 3A | | | | 205 |
| 4A | | | | |
| 5A | | | | |
| 10B | | | 32 | 400 |

### B. Compliance with AKART Standards

Condition S10.C of the Permits requires Defendants to apply all known and reasonable methods of prevention, control, and treatment ("AKART") to all discharges, including preparation and implementation of an adequate Stormwater Pollution Prevention Plan ("SWPPP") and best management practices ("BMPs"). Defendants have violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs, as evidenced by the elevated levels of pollutants in its discharge indicated in Table 1 and as described below in this notice of intent to sue.

## II. STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS

Defendants are in violation of the Permits' SWPPP provisions as follows:

1. Condition S3.A of the Permits requires Defendants to develop and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions. Defendants have violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented, and has not been updated as necessary.

2. The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs. Condition S3.B.4 of the Permits require that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. Condition S3.A.2 of the Permits requires that the SWPPP include BMPs consistent with the Stormwater Management Manual for Western Washington (SWMMWW), available at https://fortress.wa.gov/ecy/ezshare/wq/SWMMs/2024SWMMWW/2024_SWMMWW.htm or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. Defendants' SWPPP does not comply with these requirements because it does not adequately describe BMPs and does not include BMPs consistent with approved stormwater technical manuals nor does it include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

3. Defendants' SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment as mandated. The SWPPP fails to include an adequate facility assessment because it does not describe the industrial activities conducted at the site, the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility, regular business hours and seasonal variations in business hours or in industrial activities, as required.

4. Defendants' SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that identifies significant features, the stormwater drainage and discharge structures, the contributing stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific industrial activities, areas where industrial activity is conducted, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas and areas where equipment cleaning is conducted, locations where vehicles are parked or stored, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

5. Defendants' SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with

industrial activities that have been or may potentially be sources of pollutants as required. The SWPPP does not identify all areas associated with loading and unloading of material handled at the facility, outdoor storage of materials or products, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

6. Defendants' SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials. The SWPPP does not include an inventory of materials that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for material describing the potential for the pollutants to be present in stormwater discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required. The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

7. Defendants' SWPPP does not comply with Condition S3.B.3 of the Permits because it does not identify specific individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance, and modification.

8. Condition S3.B.4 of the Permits requires that permittees include in their SWPPPs and implement certain mandatory BMPs unless site conditions render the BMP unnecessary or infeasible, and an alternative and demonstrably equivalent BMP is provided. Defendants are in violation of this requirement because they have failed to include in its SWPPP and implement the mandatory BMPs of the Permits.

9. Defendants' SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs in the following categories: good housekeeping (including definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task as well as a maintenance log for completing each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee and contractor/vendor training (including an overview of what is in the SWPPP who is responsible for maintaining the SWPPP, and its location onsite, how employees make a difference in complying with the SWPPP and their role in ensuring proper maintenance of BMPs, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, the frequency/schedule of training, a log of the dates on which specific employees received training, and a report of all electronically performed trainings, as applicable); inspections and

recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, identification of personnel who conduct inspections, provision of a visual inspection report or checklist, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how Defendants will comply with signature and record retention requirements, certification of compliance with the SWPPP and Permit, and all completed inspection reports).

10. Defendants' SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

11. Defendants' SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff.

12. Defendants' SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

13. Defendants' SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

14. Defendants' SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required. The SWPPP does not include a sampling plan that: identifies points of discharge to surface waters, stormwater drainage systems, or discrete groundwater infiltration locations; documents why each discharge point is not sampled; identifies each sampling point by its unique identifying number; identifies staff responsible for conducting stormwater sampling; specifies procedures for sampling collection and handling; specifies procedures for sending samples to the a laboratory; identifies parameters for analysis, holding times and preservatives, laboratory quantitation levels, and analytical methods, and that specifies the procedure for submitting the results to Ecology.

## III. MONITORING AND REPORTING VIOLATIONS

### A. Failure to Collect Quarterly Samples

Condition S4.B of the Permits requires Defendants to collect a sample of its stormwater discharge once during every calendar quarter from each designated sampling location. Conditions S4.B.3.a of the 2020 Permit and S4.B.3 of the 2025 Permit require Defendants to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled. These conditions set forth sample collection criteria but require the collection of a sample even if the criteria cannot be met. The facility has at least four distinct points of discharge off-site:

Outfall 3A, Outfall 4A, Outfall 5A, and Outfall 10B, as well as various other additional unnamed distinct points of discharge located around the site's perimeter.

Defendants violated these requirements by failing to collect stormwater samples at any of its discharge points during the third quarter 2022 and third quarter 2024. Defendants also violated these requirements by failing to collect stormwater samples at discharge point Outfall 10A during the second quarter 2022. Defendants also violated these requirements by failing to collect stormwater samples at discharge point Outfall 10B during the second quarter 2023, third quarter 2023, and first quarter 2024. Defendants also violated these requirements by failing to collect stormwater samples at discharge point Outfall 4A during the first quarter 2025, second quarter 2025, and the third quarter 2025. Defendants also violated these requirements by failing to collect stormwater samples at discharge point Outfall 5A during the third quarter 2025.

Defendants have also violated and continues to violate these conditions because it does not sample each distinct point of discharge off-site. These violations have occurred and continue to occur each and every quarter during the last five years that Defendants were and are required to sample its stormwater discharges, including the quarters in which it collected stormwater discharge samples from some, but not each, point of discharge. These violations will continue until Defendants commence monitoring all distinct points of discharge.

### B. Failure to Analyze Quarterly Samples

Condition S5.A.1 of the Permits requires Defendants to analyze stormwater samples collected quarterly for turbidity, pH, total copper, and total zinc.

Defendants violated these conditions by failing to analyze stormwater samples collected from Outfall 3A and Outfall 5A during the first quarter of 2024 for total copper and total zinc.

### C. Failure to Timely Submit Discharge Monitoring Reports

Condition S9.B of the Permits require Defendants to use DMR forms provided or approved by Ecology to summarize, report and submit monitoring data to Ecology. For each monitoring period (calendar quarter) a DMR must be completed and submitted to Ecology not later than 45 days after the end of the monitoring period. Defendants have violated these conditions by failing to submit a DMR for any outfall within the time prescribed for the second quarter 2021, third quarter 2024, second quarter 2025, and fourth quarter 2025.

### D. Failure to Comply with Visual Monitoring Requirements

Conditions S7.A and B of the Permits require that monthly visual inspections be conducted at the facility by qualified personnel. Each inspection is to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged, observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges, observations for the presence of illicit discharges or illicit connections, a verification that the descriptions of potential pollutant sources required by the permit are accurate, a verification that the site map in the SWPPP reflects current

conditions, and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed). Once annually, dumpsters must be inspected for holes or defects.

Condition S7.C of the Permits requires that Defendants record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required. The report/checklist must include the time and date of the inspection, the locations inspected, a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits, a summary report and schedule of implementation of the remedial actions that Defendants plan to take if the site inspection indicates that the facility is out of compliance, the name, title, signature and certification of the person conducting the facility inspection, and a certification and signature of the responsible corporate officer or a duly authorized representative.

Defendants are in violation of these requirements of Condition S7 of the Permits because, during the last five years, it has failed to conduct each of the requisite visual monitoring and inspections, failed to prepare and maintain the requisite inspection reports or checklists, and failed to make the requisite certifications and summaries.

## IV. CORRECTIVE ACTION VIOLATIONS

### A. Violations of the Level One Requirements

Condition S8.B of the Permits requires Defendants to take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range for pH.

As described by Condition S8.B of the Permits, a Level One Corrective Action requires Defendants to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (2) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permits. Condition S8.B.3 of the 2020 Permit and S8.B.2 of the 2025 Permit requires Defendants to implement the revised SWPPP as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

Condition S5.A and Table 2 of the Permits establishes the following benchmarks: turbidity 25 NTU; pH 5 – 9 SU; total copper 14 µg/L; and total zinc 117 µg/L.

Defendants have violated the requirements of the Permits described above by failing to conduct a Level One Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of

additional BMPs, and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH, including the benchmark excursions listed in Table 1 above.

**B. Violations of the Level Two Requirements**

Condition S8.C of the Permits requires Defendants to take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any two quarters during a calendar year.

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires Defendants to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs in all areas/discharge points that exceeded the benchmark parameter with the goal of achieving the applicable benchmark value(s) in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.5 of the Permits; and (3) summarize the Level Two Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permits. Condition S8.C.4 of the Permits requires Defendants to implement the revised SWPPP according to Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later August 31st of the following year.

The Permits establish the benchmarks applicable to Defendants described in section IV.A of this notice of intent to sue letter.

Defendants have violated the requirements of the Permits described above by failing to conduct a Level Two Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, including additional structural source control BMPs, and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any two quarters during a calendar year. As indicated in Table 1 above, these violations include, but are not limited to, Defendants' failure to fulfill these obligations for turbidity, copper, and zinc triggered by its stormwater sampling during calendar year 2021, for turbidity and zinc triggered by its stormwater sampling during calendar year 2023, and for zinc triggered by its stormwater sampling during calendar year 2024.

**C. Violations of the Level Three Requirements**

Condition S8.D of the Permits requires Defendants to take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any three quarters during a calendar year.

As described by Condition S8.D of the Permits, a Level Three Corrective Action requires Defendants: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional treatment BMPs in all areas/discharge points that exceeded the benchmark parameter with the goal of achieving the applicable benchmark value(s) in future discharges and additional operational and/or structural source control BMPs if necessary for proper function and maintenance of treatment BMPs, and sign and certify the revised SWPPP in accordance with Condition S3.A.5 of the Permits; and (3) summarize the Level Three Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permits, including information on how monitoring, assessment, or evaluation information was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced, or it new/additional treatment BMPs will be installed. Condition S8.D.2 of the Permits requires that a licensed professional engineer, geologist, hydrogeologist, of certified professional in stormwater quality must review, sign, and certify the portion of the SWPPP that addresses stormwater treatment structures or processes. *See* Permit Appendix 2 (defining "qualified industrial stormwater professional").

Condition S8.D.3 of the Permits requires that, before installing BMPs that require the site-specific design or sizing of structures, equipment, or processes to collect, convey, treat, reclaim, or dispose of industrial stormwater, the Defendants submit an engineering report, plans, and specifications, and an operations and maintenance manual to Ecology for review in accordance with chapter 173-204 of the Washington Administrative Code. The engineering report must be submitted no later than six months after the last day of the calendar year in which the Level 3 was triggered (2025 Permit) or by the May 15th prior to the Level 3 deadline (2020 Permit). The plans and specifications and the operations and maintenance manual must be submitted to Ecology no later than 30 days after construction/installation is complete.

Condition S8.D.5 of the Permits requires Defendants to fully implement the revised SWPPP according to condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than September 30th of the following year.

The Permits establish the benchmarks applicable to Defendants described in section IV.A of this notice of intent to sue letter.

Defendants have violated the requirements of the Permits described above by failing to conduct a Level Three Corrective Action in accordance with permit conditions, including: the required review, revision and certification of the SWPPP; the requirement to have a specified professional sign and certify the portion of the SWPPP pertaining to treatment; the required implementation of additional BMPs, including additional treatment BMPs; the required submission of an engineering report, plans, specifications, and an operations and maintenance plan; and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any three quarters during a calendar year. As indicated in Table 1 above, these violations include, but are not limited to, Defendants' failure to fulfill these obligations for copper and zinc triggered by its stormwater sampling during calendar year 2021.

In addition, Defendants triggered a Level Three Corrective Action obligation for zinc during calendar year 2025. If the Defendants do not conduct a Level Three Corrective Action in accordance with the permit conditions, Defendants will be in violation of its Condition S8.D as described above.

## V. VIOLATIONS OF THE ANNUAL REPORT REQUIREMENTS

Condition S9.C of the Permits require Defendants to submit an accurate and complete annual report to Ecology no later than May 15 of each year. The annual report must include corrective action documentation as required in Condition S8.B – D of the Permits. If a corrective action is not yet completed at the time of submission of the annual report, Defendants must describe the status of any outstanding corrective action. Specific information to be included in the annual report is identification of the conditions triggering the need for corrective action, description of the problem and identification of dates discovered, summary of any Level 1, 2, or 3 corrective actions completed during the previous calendar year, including the dates corrective actions were completed, and description of the status of any Level 2 or 3 corrective actions triggered during the previous calendar year, including identification of the date Defendants expect to complete corrective actions.

Defendants have violated this condition. The annual report submitted by Defendants for 2021 (in 2022) does not include the required information. Specifically, the report was submitted after the May 15 deadline and does not adequately describe the additional treatment BMPs Defendants implemented or planned to implement as part of its Level 3 corrective actions. The annual report submitted by Defendant for 2023 (in 2024) does not include the required information. Specifically, the report does not adequately describe the additional structural BMPs Defendants implemented or planned to implement as part of its Level 2 corrective actions. The annual report submitted by Defendants for 2024 (in 2025) does not include the required information. Specifically, the report does not adequately describe the additional structural BMPs Defendants implemented or planned to implement as part of its Level 2 corrective action.

## VI. VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS

### A. Failure to Record Information

Condition S4.B.4 of the Permits requires Defendants to record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Defendants collected the sample within the first 12 hours of stormwater discharge event, an explanation of why Defendants could not collect a sample within the first 12 hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling. Defendants are in violation of these conditions as it has not recorded each of these specified items for each sample taken during the last five years.

### B. Failure to Retain Records

Condition S9.D of the 2020 Permits require Defendants to retain for a minimum of five years a copy of the current Permit, a copy of Defendants' coverage letter(s), records of all

sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit. Defendants are in violation of these conditions because it has failed to retain records of such information, reports, and other documentation during the last five years.

## VII. FAILURE TO REPORT PERMIT VIOLATIONS

Condition S9.F of the Permits requires Defendants to take certain actions in the event Defendants are unable to comply with any of the terms and conditions of the Permits which may endanger human health or the environment, or exceed any numeric effluent limitation in the permit. In such circumstances, Defendants must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and Defendants must immediately notify the appropriate Ecology regional office of the failure to comply. Defendants must then submit a detailed written report to Ecology, including specified details, within 5 days of the time Defendants became aware of the circumstances, unless Ecology requests an earlier submission.

Defendants routinely violates these requirements, including each and every time Defendants failed to comply with the corrective action requirements described in section IV of this notice of intent to sue; and each and every time Defendants discharged stormwater with concentrations of pollutants in excess of the Permit benchmarks, as described in Table 1, above. All these violations may endanger human health or the environment.

## VIII. REQUEST FOR SWPPP

Pursuant to Condition S9.G of the Permits, Waste Action Project hereby requests that Americold Logistics LLC and BCS Operations LLC provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should Defendants fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.G of the Permits, they will be in violation of that condition, which violation shall also be subject to this notice of intent to sue and any ensuing lawsuit.

## IX. CONCLUSION

The above-described violations reflect those indicated by the information currently available to Waste Action Project. These violations are ongoing. Waste Action Project intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $68,445 per violation per day. *See* 40 C.F.R. § 19.4. In addition to civil penalties, Waste Action Project will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Further, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Waste Action Project believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Americold Logistics LLC and BCS Operations LLC under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

SMITH & LOWNEY, PLLC

By: /s/Meredith Crafton
Meredith Crafton
/s/Katelyn Kinn
Katelyn Kinn

cc: Lee Zeldin, Administrator, U.S. EPA
Emma Pokon, Region 10 Administrator, U.S. EPA
Casey Sixkiller, Director, Washington Department of Ecology
Thomas Johnson, Registered Agent for BCS Operations, LLC (2825 Roeder Ave, Bellingham, WA 98225-2053)
Corporation Service Company, Registered Agent for Americold Logistics, LLC (300 Deschutes Way SW, Ste 208 MC-CSC1, Tumwater, WA 98501)